UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| SHENTASIA JOHNSON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No.: 3:24-CV-70-CEA-JEM |
|  | ) |  |
| TENNESSEE STATE BOARD OF EDUCATION, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

### ORDER AND REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b) and the Rules of this Court on Plaintiff's Applications to Proceed in Forma Pauperis with Supporting Documentation ("Application") [Docs. 1, 4, and 10] and her Complaint [Doc. 2].

Because Plaintiff corrected the deficiencies in her original Applications [**Docs. 1 and 4**], these are **DENIED AS MOOT.** For the reasons more fully stated below, the Court **GRANTS** her Application [**Doc. 10**] and will therefore allow Plaintiff to file her Complaint without the payment of costs. The undersigned **RECOMMENDS** that the District Judge **DISMISS** the Complaint [Doc. 2].

### I.  DETERMINATION ABOUT THE FILING FEE

Plaintiff has filed an Application [Doc. 10] with the required detailing of her financial condition. Section 1915 allows a litigant to commence a civil or criminal action in federal court without paying the administrative costs of the lawsuit. *Denton v. Hernandez*, 504 U.S. 25, 27 (1992). The Court's review of an application to proceed without paying the administrative costs of the lawsuit is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262–63 (6th Cir. 1990) (observing that "the filing of a complaint is conditioned

solely upon a person's demonstration of poverty in his affidavit and the question of frivolousness is taken up thereafter"). To proceed without paying the administrative costs, the plaintiff must show by affidavit the inability to pay court fees and costs—it is a threshold requirement. 28 U.S.C. § 1915(a)(1). One need not be absolutely destitute, however, to enjoy the benefit of proceeding in the manner of a pauper, or in forma pauperis. *Adkins v. E. I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 342 (1948). An affidavit to proceed without paying the administrative costs is sufficient if it states that the plaintiff cannot, because of poverty, afford to pay for the costs of litigation and still pay for the necessities of life. *Id*. at 339.

The Court finds the Application is sufficient to demonstrate that Plaintiff has little income and several liabilities and expenses. Considering Plaintiff's Application, it appears to the Court that her economic status is such that she cannot afford to pay for the costs of litigation and still pay for the necessities of life. The Court will allow Plaintiff to proceed in the manner of a pauper. The Court **DIRECTS** the Clerk to file the Complaint in this case without payment of costs or fees. The Clerk **SHALL NOT**, however, issue process at this time.

II. RECOMMENDATION AFTER SCREENING THE COMPLAINT

Under the Prison Litigation Reform Act of 1995 ("PLRA"), the Court is required to screen complaints. 28 U.S.C. § 1915.[1] To accomplish this end, the Court must evaluate the litigant's indigence, but notwithstanding indigence, a court must dismiss a matter under 28 U.S.C. § 1915(e)(2)(B) if [it] determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who

---

[1] Despite the reference to prisoners, 28 U.S.C. § 1915 requires the Court to screen complaints filed by non-prisoners seeking in forma pauperis status *McGore v. Wrigglesworth*, 114 F. 3d 601, 608 (6th Cir. 1997) ("Unlike prisoner cases, complaints by non-prisoners are not subject to screening process required by § 1915A. The district court, however, must still screen the complaint under § 1915(e)(2)."), *overruled on other grounds*, *Jones v. Brock*, 549 U.S. 199 (2007).

2

Case 3:24-cv-00070-CEA-JEM   Document 11   Filed 09/16/24   Page 2 of 9   PageID #: 47

is immune from such relief." To survive an initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v Twombly*, 550 U.S.544, 570 (2007)).

Specifically, under Rule 8(a) of the Federal Rules of Civil Procedure, a pleading must provide:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ;
>
> (2) a short and plain statement of the claim showing that the pleading is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a)(1)–(3). Otherwise, the complaint is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### A.  Summary of the Complaint

Plaintiff has filed suit against the Tennessee State Board of Education ("Board"), the Knoxville Police Department ("KPD"), Ryan Kuykendall ("Defendant Kuykendall"), and the Knox County School Board ("KCSB") [Doc. 2 p. 1]. She alleges that Defendants violated her Fifth Amendment rights under 42 U.S.C. § 1983 [*Id*.].

On February 16, 2023, "Plaintiff was involved in an alleged incident at Bearden High School . . . during school hours" [*Id*. at 2, 4]. She was 18 years old at the time of the incident [*Id*. at 4]. Defendant Kuykendall, who is employed by KPD, "tried to question [P]laintiff and get her to sign some paperwork" [*Id*. at 2]. He told her that if she refused to sign, "she would be arrested and taken off property to be detained" [*Id*.]. She alleges that she "was never told about her rights

to remain silent, against self[-]incrimination or to get a lawyer, at any time. School administration attempted to get [P]laintiff to provide a statement per the student handbook and policy. This alone could have violated her [Fifth] [A]mendment rights" [*Id*.]. She attempted to contact her father, but Defendant Kuykendall told her that she could contact her father after she signed the paper [*Id*. at 4]. When she started hyperventilating, the principal told Defendant Kuykendall to contact Plaintiff's father [*Id*.]. After Plaintiff spoke to her father, she "learn[ed] that [Defendant Kuykendall's threats of arrest were unfounded" [*Id*.].

"According to [the Board] and [KCSB] policies, officers are given the freedom to do this in the schools without contacting parents or anyone else before questioning/interrogating a student" [*Id*. at 2]. Indeed, Plaintiff alleges, "Knox County Schools' leadership insisted on the 18-year[-]old student providing a statement about the incident" [*Id*. at 4]. Plaintiff states that "[w]hen there are possible criminal implications and liability to an incident, this 'statement' could be seen as violating a student's [Fifth] [A]mendment right to self[-]incrimination and could be used against the student in any criminal procedures that may follow" [*Id*.]. She states that "Knox County Schools lacks clear communication about changes for an 18-year[-]old in its handbook" [*Id*. at 5]. "[P]laintiff accuses Officer Kuykendall of violating her [Fifth] [A]mendment rights, manipulating her, and acting in contrast to KPD policy, possibly due to cultural issues or disdain through other interactions [Plaintiff] has observed between her father and the school system" [*Id*.]. According to Plaintiff, "this is not his first incident of showing a racist cultural disdain" [*Id*.]. "[She] alleges racial bias, suggesting that Officer Kuykendall might not have behaved similarly if she were a white female like the other [two] girls involved in the incident. Knox County Schools, despite being informed, remained silent, potentially violating civil rights and Title IX by not addressing the situation appropriately, especially given [P]laintiff's race" [*Id*.]. Plaintiff has

4

requested the body cam footage from the incident, but KPD "has not responded to that request" [*Id*. at 6].

Based on the above, she seeks nominal damages in the amount of $1.00 [*Id*. at 5]. She also seeks emotional damages in the amount of $10,000 [*Id*.]. In addition, Plaintiff requests that "the state[] and local school boards . . . institute policies that make sure they are protecting the rights of students in their car and not trampling over their rights because they are dealing with juveniles and can get away with it most of the time" [*Id*.]. Plaintiff proposes how the policies should be re-written [*Id*. at 5–7].

B. **Screening the Complaint**

Plaintiff alleges violations of her Fifth Amendment rights under 42 U.S.C. § 1983. This statute allows a plaintiff to seek redress from state actors for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *see also Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a claim under § 1983, a plaintiff must allege (1) a deprivation of rights secured by the "Constitution and laws" of the United States and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

As an initial matter, the Board is a state agency. *JLF v. Tenn. State Bd. of Educ.*, No. 3:21-CV-00621, 2022 WL 1571307, at *3 (M.D. Tenn. May 18, 2022) (citation omitted). The Eleventh Amendment to the United States Constitution bars citizens from suing nonconsenting states in federal court. U.S. Const. amend. XI. "This protection from suit exists unless the United States Congress has validly abrogated the immunity or the state has waived its sovereign immunity and consented to suit." *Annette v. Haslam*, No. 3:18-1299, 2020 WL 434162, at *7 (M.D. Tenn. Jan. 27, 2020) (citations omitted), *report and recommendation adopted*, No. 3:18-CV-1299,

2020 WL 1061126 (M.D. Tenn. Mar. 5, 2020). Congress has not done so, and "the State of Tennessee has not consented to waive its immunity in [§ 1983] actions." *Id*. (citations omitted). The undersigned recommends that the action be dismissed against the Board because it is immune from suit. *JLF*, 2022 WL 1571307, at *4 ("In this case, the Eleventh Amendment bars the plaintiff's § 1983 claims against the State Board.").

The Fifth Amendment of the United States Constitution provides, in part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend V. "The Fifth Amendment privilege 'can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" *McKamey v. Skrmetti*, No. 3:24-CV-00363, 2024 WL 3926502, at *9 (M.D. Tenn. Aug. 22, 2024) (quoting *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972)). "'[M]ere coercion does not violate the . . . Self-Incrimination Clause Absent use of the compelled statements in a criminal case.'" *McKinley v. City of Mansfield*, 404 F.3d 418, 430 (6th Cir. 2005) (ellipses in original and footnote omitted) (quoting *Chavez v. Martinez*, 538 U.S. 760, 769 (2003)). In order to properly assert a Fifth Amendment violation of the right against self-incrimination, the statements must be used against the plaintiff in a criminal proceeding. *See Haddad v. Gregg*, 910 F.3d 237, 253–54 (6th Cir. 2018) (finding no Fifth Amendment violation because the statements were never used against the plaintiff in a criminal proceeding); *see also McKamey*, 2024 WL 3926502, at *10 ("The plaintiff does not allege that he has actually been compelled to speak, that he has suffered any consequence arising from his failure to provide compelled testimony, that his compelled testimony has been used against him in a criminal proceeding, or even that he has been threatened with the use of compelled testimony."

(citations omitted)); *Arsan v. Keller*, No. 3:17-CV-121, 2018 WL 635894, at *5 (S.D. Ohio Jan. 31, 2018) ("Plaintiff does not allege, however, that she was prosecuted for a crime or compelled to be a witness against herself in a criminal case. Accordingly, Plaintiff fails to state a plausible claim under the Fifth Amendment."), *report and recommendation adopted*, No. 3:17-CV-121, 2018 WL 3933706 (S.D. Ohio Aug. 16, 2018), *aff'd*, 784 F. App'x 900 (6th Cir. 2019). Here, Defendants did not procure a statement from Plaintiff; instead, she alleges that they attempted to do so. Because Plaintiff did not give a statement, nothing can be used against her in a criminal proceeding. She therefore fails to state a plausible claim under the Fifth Amendment for the right against self-incrimination.

Plaintiff also alleges that Defendants did not read her rights [Doc. 2 p. 2]. "In order to safeguard [the] right [against self-incrimination], the Supreme Court announced in *Miranda* that '[p]rior to any questioning, the person [in custody] must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Taylor v. Smith*, No. 3:20-CV-00747, 2020 WL 5407731, at *3 (M.D. Tenn. Sept. 9, 2020) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, (1966)). Although she did not submit a statement to Defendants, "even if [she] were coerced into giving a custodial statement without being warned, that event itself would not amount to a constitutional violation[.]" *Id*. (quoting *Chavez*, 538 U.S. at 767, to explain). The consequence of procuring a statement without reading an individual's rights is that the prosecution cannot use the statements. *Miranda*, 384 U.S. at 444. "But the *Miranda* rule does not

create an independent constitutional right to such warnings." *Taylor*, 2020 WL 5407731, at *3. Based on the above, Plaintiff's claims fail as a matter of law. [2] [3]

C.  **Amending the Complaint**

The undersigned has considered allowing Plaintiff to amend her Complaint but declines to do so because her claims fail as a matter of law.

III. **CONCLUSION**

For the reasons explained above, the undersigned **DENIES AS MOOT** Plaintiff's Applications to Proceed in Forma Pauperis with Supporting Documentation [**Docs. 1 and 4**] and

---

[2]  Further, although she names Knoxville Police Department as a Defendant, it is not an entity that can be sued under § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In light of her pro se status, the undersigned has construed the claims against Knox County. *See id*. ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of [the plaintiff's] complaint."). But her claims fail against the county for the same reasons as above. *Woodall v. Wayne Cnty.*, 590 F. Supp. 3d 988, 1005 (E.D. Mich. 2022) (noting that before the court considers municipality liability, the court must first address whether there was a constitutional violation).

[3]  The Court construes Plaintiff's Complaint as an action under § 1983 for violating her Fifth Amendment rights because this is what she explicitly pleads [Doc. 2 p. 1]. But she also "suggest[s] that Officer Kuykendall might not have behaved similarly if she were a white female like the other [two] girls in the incident" [*Id*. at 5]. She states that Defendant Kuykendall violated her Fifth Amendment rights "possibly due to cultural issues or disdain through other interactions [she] has observed between her father and the school system" [*Id*.]. And because Knox County Schools remained silent, it "potentially violat[ed] her civil rights and Title IX" [*Id*.]. Plaintiff's use of speculative phrases ("possibly due to cultural issues[,]" "suggesting that [Defendant] Kuykendall might not have[,]" and "potentially violating civil rights and Title IX") is not sufficient to state a claim. *See Hodges v. McCurdy*, No. 1:18 CV 1031, 2018 WL 3863453, at *1 (N.D. Ohio Aug. 14, 2018) ("The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all of the allegations in the Complaint are true." (citation omitted)).

**GRANTS** her Application [**Doc. 10**].[4] The undersigned **RECOMMENDS**[5] that the District Judge **DISMISS** Plaintiff's Complaint [**Doc. 2**].

Respectfully submitted,

*Jill E. McCook*
Jill E. McCook
United States Magistrate Judge

---

[4] This matter is to be presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990), wherein the Court of Appeals states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed without prepayment of costs.

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).